# VOCODIA HOLDINGS CORP.

## PROPRIETARY INFORMATION AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my employment and/or continued employment with Vocodia Holdings Corp. (the "*Company*"), and in that role any collaborative work that I might perform with the Company, its, subsidiaries, affiliates, successors or assigns, and as part of the consideration for my employment with the Company and my receipt of compensation from the Company, I agree to the following:

1. CONFIDENTIAL INFORMATION.

    A. *Definition of Company Confidential Information.* "*Company Confidential Information*" means any and all confidential and/or proprietary materials, knowledge, data or information of the Company, its business, employees, consultants and independent contractors, systems, plans, policies, trade practices, suppliers, customers and finances, to which I have access during my employment or consulting relationship with the Company. By way of illustration but not limitation, "Company Confidential Information" includes (a) trade secrets, inventions, mask works, ideas, innovations, processes, plans, proposals, strategies, tactics, materials, information, formulas, source and object codes, data, programs, know-how, improvements, discoveries, developments, concepts, designs, videos, techniques, works of authorship, domains and URLs, social media accounts (including log-in information, connections, relationships and content), patent, copyright, design right and trademark applications and registrations, and product/service, branding, trademarks and marketing concepts, strategies and programs (all of the foregoing in this subsection (a), collectively, "*Inventions*"); (b) information regarding research, development, new products and services, contracts, systems, tools, technologies, opportunities, vulnerabilities and flaws, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, partners, vendors, venturers, suppliers and customers; and (c) information regarding the experience, skills and compensation of other employees, consultants and independent contractors of the Company and other personnel data. Company Confidential Information does not include any of the items listed above to the extent they are or become publicly known and/or become generally known through no wrongful act, whether such wrongful act is committed by me or a third party.

    B. *Obligations regarding Company Confidential Information.* During my employment with the Company and afterwards, I agree (i) to keep Company Confidential Information in the strictest confidence; (ii) not to use Company Confidential Information except for the Company's benefit; and (iii) not to disclose Company Confidential Information to any person, firm or corporation without prior written authorization of the Company's Chief Executive Officer, President or Board of Directors. I understand that my unauthorized use or disclosure of Company Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination of my employment, and to possible legal action by the Company.

    C. *Former Employer Information.* During my employment with the Company, I will not improperly use, disclose, or induce the Company to use, any proprietary information or trade secrets belonging to any former or concurrent employer, or to any other person or entity. I



will not bring onto the Company's premises or use the Company's technology systems in connection with any unpublished document, proprietary information or trade secrets belonging to any former or concurrent employer, or other person or entity, unless both the Company and such employer, or other person or entity, that is the owner of such information provide advance consent in writing.

    D. *Third-Party Information.* I recognize that the Company has received and in the future may receive confidential or proprietary information from third parties, such as the Company's customers, suppliers, licensors, licensees, partners, or collaborators. Such third parties are *"Associated Third Parties"* below, and their confidential or proprietary information is *"Associated Third-Party Confidential Information."* Associated Third-Party Confidential Information may include, for example, the habits or practices, technology, or requirements of Associated Third Parties, and/or information related to business between them and the Company. The Company often enters into confidentiality agreements with Associated Third Parties to ensure that Associated Third-Party Confidential Information (and Company Confidential Information) are maintained in confidence. I agree that during my employment with the Company and afterwards, I will maintain Associated Third-Party Confidential Information in the strictest confidence, and will not use or disclose it to any person, firm or corporation except as required in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties. I understand that my unauthorized use or disclosure of Associated Third-Party Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination of my employment, and to possible legal action by the Company.

    E. *Immunity From Liability for Confidential Disclosure of a Trade Secret to the Government or in a Sealed Court Filing.* I understand that the federal Defend Trade Secrets Act of 2016 immunizes me against criminal and civil liability under federal or state trade secret laws – under certain circumstances – if I disclose a trade secret for the purpose of reporting a suspected violation of law. Immunity is available if I disclose a trade secret in either of these two circumstances:

    (1) I disclose the trade secret (a) in confidence, (b) directly or indirectly to a government official (federal, state or local) or to a lawyer, and (c) solely for the purpose of reporting or investigating a suspected violation of law; or

    (2) In a legal proceeding, I disclose the trade secret in the complaint or other documents filed in the case, so long as the document is filed "under seal" (meaning that it is not accessible to the public).

    F. *No Conflicting Obligation.* I represent that my performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence the Company Confidential Information acquired by me in confidence or in trust prior to my becoming an employee of the Company, and I will not disclose to the Company, or induce the Company to use, any Company Confidential Information or material belonging to any previous employer or others. I agree not to enter into any written or oral agreement that conflicts with the provisions of this Agreement.



G. *Return of Company Documents.* Upon termination of my employment with the Company for any reason whatsoever, voluntarily or involuntarily, and at any earlier time the Company requests, I will deliver to the person designated by the Company all originals and copies of all Company Confidential Information in my possession or control, including but not limited to drawings, specifications, documents, records, devices, models or any other material and copies or reproductions thereof.

2. INVENTIONS.

A. *Inventions Retained and Licensed.* Attached as Exhibit A is my list describing all Inventions, discoveries, original works of authorship, developments, improvements, and trade secrets that (i) I conceived in whole or in part before commencing my employment with the Company, and (ii) relate to the Company's current or proposed business, products, or research and development ("*Prior Inventions*"). If no such list is attached, I represent and warrant that no such Prior Inventions exist. I further represent and warrant that the inclusion of any Prior Inventions on Exhibit A to this Agreement will not materially affect my ability to perform all obligations under this Agreement. If, during my employment with the Company, I incorporate into or use any fully developed Prior Invention in connection with any product, process, service, technology or other work by or on behalf of Company, I hereby grant to the Company a nonexclusive, royalty-free, fully paid-up, irrevocable, perpetual, worldwide license, with the right to grant and authorize sublicenses, to make, have made, modify, use, import, offer for sale, and sell such Prior Invention as part of or in connection with such product, process, service, technology or other work and to practice any related method.

B. *Assignment of Inventions.* I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby now assign to the Company or to its designee(s) all of my right, title, and interest in and to any and all Inventions, whether or not patentable or registrable under patent, copyright or similar laws, that I may solely or jointly conceive, develop or reduce to practice, or cause to be conceived, developed or reduced to practice, (i) during the period of time that the Company employs me (including during my off-duty hours), or (ii) in connection with the use of the Company's equipment, supplies, facilities, personnel, or Company Confidential Information, except as provided in Section 2.F. below. I further acknowledge that all original works of authorship that I may make (solely or jointly with others) within the scope of and during the period of my employment with the Company and that are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that any decision whether or not to commercialize or market any Inventions is within the Company's sole discretion and for the Company's sole benefit, and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Inventions.

C. *Maintenance of Records.* I agree to keep and maintain adequate, current, accurate, and authentic written records of all Inventions that I create (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Company. The records are and will be available to, and remain the sole property of, the Company at all times.



D.  *Patent and Copyright Registrations.*  I agree to assist the Company or its designee(s), at the Company's reasonable expense, to secure the Company's rights in any Inventions and in any rights relating to such Inventions in any and all countries. Such assistance regarding any Inventions and/or related rights includes, without limitation, full disclosure to the Company of all pertinent information and data; the execution of all applications, specifications, oaths, assignments and all other instruments that the Company might deem proper or reasonably necessary to apply for, register, obtain, maintain, defend, and enforce such rights, and/or to assign and convey to the Company, its successors, assigns, and/or nominees the sole and exclusive rights, title and interest in and to such Inventions and any rights relating to them; and testifying in a lawsuit or other proceeding relating to such Inventions and any rights relating to them. I expressly agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers continues after the termination of this Agreement, at the Company's reasonable expense. If the Company is unable, because of my mental or physical incapacity or for any other reason, to secure my signature with respect to any Inventions including, without limitation, to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering such Inventions, then I hereby irrevocably designate and appoint the Company and/or its duly authorized officers and agents as my agent and attorney-in-fact, to act for and on my behalf and stead to execute and file any papers, oaths and to do all other lawfully permitted acts with respect to such Inventions with the same legal force and effect as if I executed them.

E.  *Moral Rights.*  I hereby irrevocably waive, to the extent permitted by applicable law, any and all claims that I may now or later have, in any jurisdiction, to all rights of paternity, integrity, disclosure, and withdrawal, and any other rights that may be known as "moral rights," with respect to all Inventions, whether or not patentable, registrable or otherwise arising under patent, copyright or similar laws.

F.  *Exception to Assignments.*  I understand that the provisions of this Agreement requiring assignment of Inventions to the Company shall not apply to any invention that I have developed entirely on my own time, without using any of the Company's equipment, supplies, facilities, or Company Confidential Information, except for those inventions that either (i) relate at the time of conception or reduction to practice of the invention to the Company's business, or actual or demonstrably anticipated research or development of the Company, or (ii) result from any work that I performed for the Company. I will advise the Company promptly in writing of any inventions that I believe meet the foregoing criteria and are not otherwise disclosed on Exhibit A.

3.  REPRESENTATIONS.  I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I represent and warrant that I have not entered into, and I will not enter into, any oral or written agreement that conflicts with this Agreement.

4.  REMEDIES.  I acknowledge that Company Confidential Information and the Company's ability to reserve it for the exclusive knowledge and use of the Company is of great competitive importance and commercial value to the Company. I also acknowledge that any



improper use or disclosure of Confidential Information that I might make will cause the Company irreparable harm for which remedies at law will not be adequate. I will not breach or threaten to breach of any of the provisions of this Agreement, but if I did, I consent and agree that the Company shall be entitled to (i) seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, (ii) without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and (iii) without the necessity of posting any bond or other security. Any such equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages, or other available forms of relief.

5. NON-COMPETITION AND NON-SOLICITATION.

A. *Non-Competition.* During the term of my employment with the Company, and for two (2) years immediately following any termination of my employment with the Company, I will not (i) engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved, (ii) engage in any other activities that conflict with my obligations to the Company, or (iii) hold an ownership interest in any competitor of the Company engaging in a business activity directly related to the business in which the Company is now involved or becomes involved (other than holding (x) an ownership of up to three percent (2%) of the outstanding shares of a publicly traded company, (y) the passive ownership of not more than three percent (3%) of the outstanding equity interest of any public or private debt or equity investment fund (A) owning an interest in any corporation or other entity that competes with the Company, and (B) in which I do not have the ability to control or exercise any managerial influence over such fund, or (z) ownership in a non-publicly traded company or business if such ownership is disclosed by me to the Company in writing and approved by the chief executive officer or chief financial officer of the Company in writing in his sole discretion).

B. *Non-Solicitation.* During the term of my employment with the Company, and for two (2) years immediately following any termination of my employment with the Company, I will not, directly or indirectly (whether for compensation or without compensation), (i) solicit any customer, distributor, supplier or other business relation of the Company for the purpose of inducing, or otherwise induce or attempt to induce, any such person or entity to cease or diminish doing business with the Company, or (ii) hire or recruit any employee of the Company or solicit or induce, or attempt to induce, any employee or contractor of the Company to terminate his, her or its employment with, or otherwise cease his, her or its relationship with, the Company; provided, however, the restrictions contained in this Section 5.B. shall not apply to (x) general solicitations, including through newspapers, trade journals, the internet or any similar media or staffing agencies, not specifically directed to employees or contractors of the Company, or (y) individuals who contact the Company, directly or indirectly, independently of solicitation by the Company.

6. GENERAL PROVISIONS.

A. *Governing Law; Consent to Personal Jurisdiction.* This Agreement will be governed by the laws of the State of Florida without giving effect to any choice of law rules or principles that may result in the application of the laws of any jurisdiction other than Florida. To



the extent that any lawsuit is permitted under this Agreement, I hereby expressly consent to the personal jurisdiction of the state and federal courts located in Florida for any lawsuit filed against me by the Company.

        B.    *Entire Agreement.* This Agreement, together with its Exhibits, sets forth the entire agreement and understanding between the Company and me relating to the subject matter of this Agreement, and supersedes all prior discussions or representations between us including, but not limited to, any representations made during my interview(s) or relocation negotiations (if any), whether written or oral. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the Chief Executive Officer or President of the Company and me. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

        C.    *Severability.* If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

        D.    *Successors and Assigns.* This Agreement will be binding upon my heirs, executors, assigns, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns. There are no intended third-party beneficiaries to this Agreement unless and except as expressly stated.

        E.    *Waiver.* A waiver by the Company of a breach of any provision of this Agreement will not operate as a waiver of any other provision or of any subsequent breach.

        F.    *Survival.* The rights and obligations of the parties to this Agreement will survive termination of my employment with the Company.

        G.    *Signatures.* This Agreement may be executed in counterparts and shall have the same force and effect as if all parties had executed one document. A faxed or PDF signature shall be treated as an original signature.

**Accepted and Agreed:**

Signature: *Omer Khan* (DocuSigned)

Omer Khan      7/26/2022

Name: [Employee]      Date

Witness:

*Miriam Martinez*
Miriam Martinez (Jul 27, 2022 13:29 EDT)

Signature

**Miriam Martinez**

Name      Date

**VOCODIA HOLDINGS CORP.**

Signature

**Brian Podolak**      Jul 27, 2022

Name      Date

Case 9:22-cv-81472-DMM Document 1-3 Entered on FLSD Docket 09/21/2022 Page 7 of 8
DocuSign Envelope ID: 447AF9AF-7EC0-42CC-BD05-7C47C3946F88

# EXHIBIT A

## LIST OF PRIOR INVENTIONS
## AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number or Brief Description |
|---|---|---|
| | | |

___ No inventions or improvements

___ Additional Sheets Attached

Signature: *Omer Khan* (DocuSigned by: 5CBF93353C484CB...)

Name: [Employee] Omer Khan

Date: 7/26/2022

# Vocodia Proprietary Info and Invention Assignment Agreement_5.11.21_MM.docx

**Final Audit Report**            2022-07-27

| | |
|---|---|
| Created: | 2022-07-27 |
| By: | Brian Podolak (brian@vocodia.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAeUROEIkJCLmduQMRPIl1lr9hs-ktz8Pn |

## "Vocodia Proprietary Info and Invention Assignment Agreement_5.11.21_MM.docx" History

- Document digitally presigned by DocuSign\, Inc. (enterprisesupport@docusign.com)
  2022-07-26 - 10:22:49 PM GMT- IP address: 104.10.13.141

- Document created by Brian Podolak (brian@vocodia.com)
  2022-07-27 - 5:26:16 PM GMT- IP address: 104.10.13.141

- Document e-signed by Brian Podolak (brian@vocodia.com)
  Signature Date: 2022-07-27 - 5:27:25 PM GMT - Time Source: server- IP address: 104.10.13.141

- Document emailed to mimi@vocodia.com for signature
  2022-07-27 - 5:27:27 PM GMT

- Email viewed by mimi@vocodia.com
  2022-07-27 - 5:27:31 PM GMT- IP address: 40.94.33.126

- Signer mimi@vocodia.com entered name at signing as Miriam Martinez
  2022-07-27 - 5:28:59 PM GMT- IP address: 104.10.13.141

- Document e-signed by Miriam Martinez (mimi@vocodia.com)
  Signature Date: 2022-07-27 - 5:29:01 PM GMT - Time Source: server- IP address: 104.10.13.141

- Agreement completed.
  2022-07-27 - 5:29:01 PM GMT

**Adobe Acrobat Sign**